**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

ROBERT V. ROSSI and :
LINDA A. ROSSI, :
Plainitffs :
: C.A.No. 05-299- S
:
GEM PLUMBING & HEATING CO., INC. :
Defendant :

**PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, TO ABSTAIN**

Now come the Plaintiffs, Robert V. Rossi and Linda A. Rossi, who hereby object to Defendant's Motion for Judgment on the Pleadings, or in the Alternative, To Abstain. As grounds in support of this objection, Plaintiffs state that the relief sought by the motion is not supported by the facts or the law. The reasoning and precedent supporting this objection are contained in Plaintiffs' Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings, or in the Alternative, to Abstain, which is filed contemporaneously herewith and incorporated herein by reference.

WHEREFORE, Plaintiffs request that the Defendant's Motion for Judgment on the Pleadings or to Abstain, be denied.

PLAINTIFFS ROBERT V. ROSSI
AND LINDA A. ROSSI,
by their Attorney

3/24/06

Patrick J. Dougherty
155 South Main Street, Suite 304
Providence, Rhode Island 02903
tel. (401) 273-9770
fax (401) 273-4750

## CERTIFICATION

I hereby certify that I caused a copy of the within Plaintiffs' Objection to Defendant Gem Plumbing & Heating Co., Inc.'s Motion for Judgment on the Pleadings or in the Alternative to Abstain to be served via first class postage prepaid mail to **Theodore Orson, Esq.**, ORSON AND BRUSINI, LTD., 55 Dorrance Street, Suite 400, Providence, RI 02903 on this 24th day of March, 2006.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ROBERT V. ROSSI and<br>LINDA A. ROSSI,<br>Plaintiffs | : | |
| v. | : | C.A. No. 05-299 - S |
| GEM PLUMBING & HEATING CO., INC.<br>Defendant | : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, TO ABSTAIN**

**INTRODUCTION**

Plaintiffs Robert and Linda Rossi have brought this action for legal, equitable and declaratory relief under 42 U.S.C. § 1983 and under the common law of Rhode Island. Their claims arises out of the Defendant's interference, via state action, with the Plaintiffs' constitutionally-protected right not to be deprived of their property without due process of law. Plaintiff also assert a supplemental state-law claim for damages based on the Defendant's slander of title to their property. Defendant has now moved for judgment on the pleadings, or to abstain, on the grounds of the *Rooker-Feldman* doctrine, collateral estoppel, *res judicata*, federal abstention, and Fed. R. Civ. Proc. 12(b)(6).

Defendant's motion is premised entirely upon its misconception that Plaintiffs' Complaint amounts to an attack upon, or a collateral effort to modify, review or undo, the opinion of the Rhode Island Supreme Court, *Gem Plumbing & Heating Co., Inc. v. Robert V. Rossi,* 867 A.2d 796 (R.I. 2005). Plaintiffs' Complaint is anything but such an effort, and in many respects, it is

a logical and natural outgrowth of the R.I. Supreme Court's decision in *Gem*. They are entitled to relief from the Defendant's action that was taken under the now judicially-declared unconstitutional earlier version of the R.I. Mechanics' Lien statute. Defendant used this unconstitutional state law to encumber Plaintiffs' property and then cause their funds to be detained, depriving Plaintiffs of their property without due process. Their funds in the amount $35,860 have been held up in the Superior Court registry for nearly four years, continuing to this day.

The harm to Plaintiffs cannot be adequately rectified or redressed by merely litigating the merits of Gem's claim for its work, and the Rossis' defenses to that claim. The deprivation of the Rossis' property without due process occurred by operation of the old Mechanics' Lien statute, a judicially-declared unconstitutional statute. Although Plaintiffs' claim for the deprivation of their property without due process bears a relationship to the state court claims in the broader historical context, it is a separate cause of action from those claims. As civil rights claim that is cognizable under this Court's original, federal-question jurisdiction, it should not be dismissed.

## FACTS AND BACKGROUND

Robert and Linda Rossi own the real property designated as 28 Thurber Boulevard in Smithfield, Rhode Island. Gem Plumbing & Heating Co., Inc. is a Rhode Island corporation in the business of plumbing, heating and air conditioning contracting and repair.

Rossi is a self-employed lawyer. He and his wife decided to construct an office building at the Thurber Boulevard site where Rossi would maintain his law offices. To that end, Rossi discussed with Gem's principal, Leonard Gemma, the installation of water and sewer service to the new office building in accordance with engineering plans. Gem never sent Rossi a written

contract or "specs" for the work, although Rossi had requested one to review and approve before work was to begin. Instead, Gem proceeded to do the work with no agreed price.

Gem billed Rossi $35,500 for materials and services. The bill was not only excessive for the amount of work done, but also included charges for which the Rossis were not responsible. The Rossis protested the invoice, but Gem was determined in its refusal to negotiate and to collect the sum it alleges it was entitled to.

### A. Gem Petitioned the Superior Court to Enforce a Mechanic's Lien Against the Rossis

On January 28, 2002, Gem recorded a mechanic's lien of $35,500 in the land evidence records against the Rossis' property. Subsequently, on May 28, 2002, Gem filed a petition to enforce mechanics' lien in the Providence County Superior Court, and filed a notice of *lis pendens* against the property in the land evidence records. At the same time, the Rossis were trying to refinance the construction and the real estate itself. Their lender would not close unless the mechanics' lien were released. Meanwhile, the mechanics' lien also caused the Rossis to go into default on their existing construction/loan agreement with Sovereign Bank.

Since Gem refused to negotiate, the Rossis tried to manage the situation by obtaining a bond to discharge the mechanics' lien and thereby cure the default and to close on the refinancing. However, the bonding/insurance company required that Mr. Rossi would have to post 100% collateral plus a premium. [Another mechanics' lien and petition to enforce had been filed by general contractor Sells/Greene Building Co., Inc. in the amount of $129,807.78.] Thus, the Rossis were forced to proceed with the closing of their mortgage loans subject to the

condition of the disputed funds being held in escrow to discharge the mechanics' liens.[1] On June 4, 2002, the Rossis paid $35,860.00[2] into the Superior Court Registry to release and discharge the lien and *lis pendens,* and to secure payment.

**B. <u>The Superior Court Found the Mechanics' Lien Law Unconstitutional as Offending the Due Process Clauses of the United States and the Rhode Island Constitutions</u>**

The Rossis moved to dismiss Gem's petition and to release the funds on the ground that the R.I. Mechanics' Lien law, GEN. LAWS R.I. §34-28-1 *et seq* violated the Due Process clauses of the United States Constitution and the Rhode Island Constitution. On April 23, 2003, the Superior Court granted the Rossis's motion to dismiss. In a written decision, the Superior Court held the Mechanics' Lien law unconstitutional because the "state fails to provide the procedural due process rights required by the Fourteenth Amendment to the United States Constitution and by Article 1, Section 2 of the Rhode Island Constitution." On or about May 30, 2003, the Superior Court entered judgment for the Rossis, dismissing with prejudice Gem's Petition to Enforce Mechanics' Lien, ordered that the $35,860.00, with accrued interest, be released to the Rossis, and stayed the judgment for a thirty day period.

In early June 5, 2003, Gem appealed the dismissal to the Rhode Island Supreme Court. The Superior Court temporarily stayed its judgment to allow Gem an opportunity to seek a stay pending appeal in the Supreme Court. The Supreme Court granted that stay.

Meanwhile, Gem initiated another action against the Rossis in the Superior Court, on November 21, 2003, this time essentially a "book account" claim, apart from the Mechanics' Lien

---

[1]*See* R.I. GEN. LAWS § 34-28-17.

[2]the amount of the lien plus $360.00 in costs.

action. In this action, the Rossis have asserted counterclaims for breach of the implied duty of good faith and fair dealing, unjust enrichment, breach of warranty, and breach of contract in regard to faulty design and building of the building's HVAC system.

C. **The Defendant's Filing of a Mechanics' Lien Has Caused the Rossis' Funds to be Held in the Superior Court Registry For Almost Four Years, Beyond any Possibility of a Prompt Post-Deprivation Hearing**

As a consequence of the above, the Rossis's funds in the amount $35,860 have been held up in the Superior Court registry since mid-2002, where they remain to this day. There has been no competent evidence (other than an untested, self-serving Notice of Intention and Affidavit of Leonard Gemma) in the record of Gem's entitlement to the money, nor has ever been a determination of how much, if anything, Gem is due. Yet, the Rossis' $35,860.00 (the lien amount plus costs) has been in the Superior Court Registry, securing payment of a debt that has yet to be supported by one scintilla of judicially-tested evidence.

After the Superior Court issued its decision, but before the Supreme Court decided Gem's appeal, the R.I. General Assembly amended the Mechanic's Lien statute. On July 17, 2003, GEN. LAWS R.I. § 34-28-17.1 was added, providing for the first time a prompt post-deprivation hearing to the respondent.

In early 2005, the Supreme Court issued its opinion, *Gem v. Rossi*, 867 A.2d 976 (R.I. 2005). As it must, when a statute has been amended pending appeal, the Rhode Island Supreme Court decided Gem's appeal by analyzing the constitutionality of the *new, amended* Mechanic's Lien statute:

> "Finally, we pause to acknowledge an especially peculiar facet of this case. Although our caselaw clearly establishes that we must apply the amended statute on appeal, we note that § 34-28-17.1 (the new amendment) did not exist at the

time the motion justice analyzed the constitutional question we address today."[3]
867 A.2d at 812.

The Supreme Court did not reverse, modify, or comment adversely on the Superior Court's opinion that the *original* version of the statute -- under which the Rossis' funds remain held up in the Court registry -- does not pass constitutional muster. The Supreme Court made it clear that it was *not* passing judgment on the same statute under which Gem had filed its Mechanics' Lien against the Rossis. To that extent, the Supreme Court's opinion does not review the Superior Court's decision. In fact, the Supreme Court implicitly agreed with the Superior Court's opinion that the original statute was unconstitutional:

> "At the time of the motion justice's judgment on May 30, 2003, and before the amendment to the statute, the Rossis had precious few avenues for relief from a perfected lien . . . However, P.L. 2003, ch 269, § 1 (codified as § 34-28-17.1) enacted on July 17, 2003, significantly enhanced the rights of a property owner facing a mechanic's lien."

867 A.2d at 805.

The only issue decided by the R.I. Supreme Court in *Gem* was whether the R.I. Mechanics' Lien statute, as subsequently amended after the Superior Court decision, is constitutional on a Due Process challenge, and not whether the Rossis have a claim under 42 U.S.C. § 1983.

---

[3]The Supreme Court noted the express application in the statutory amendment to pending matters, i.e. that it "shall apply to all pending mechanics' liens or lien substitutions under chapter 34-28 of the Rhode Island Mechanics' Lien Law."

## ARGUMENT

### I. DEFENDANTS MISCONSTRUE THE SCOPE AND EFFECT OF THE RHODE ISLAND SUPREME COURT DECISION

To now interpret the R.I. Supreme Court's decision to bar the present constitutionally-based claim would offend that Court's longstanding principle of avoiding construction of a statute in any manner that would cause vested rights to be impaired by its retroactive application. *See Theta Properties v. Ronci Realty Co.*, 814 A.2d 907 (R.I. 2003) [Retroactive legislation is proper as long as it does not impair contractual obligations or interfere with vested rights.]; *see also State v. Russell*, 2006 WL 212291, ___ A.2d ___ (R.I. 2006) [*quoting Gem Plumbing & Heating Co. v. Rossi*, 867 A.2d 796, 807 (R.I. 2005); *Lawrence v. Anheuser-Busch*, 523 A.2d 864 (R.I. 1987) [R.I. Supreme Court will attach "every reasonable intendment in favor of * * * constitutionality" in order to preserve statute.]

Any reading of the R.I. Supreme Court opinion must take into consideration that it should only be read in connection with the very problems therein presented to that court. *See Commissioner of Internal Revenue v. Monarch Life Ins.*, 114 F.2d 314 (1st Cir. 1940); *Cook, Borden & Co. v. R.Z. Realty Corp.*, 147 A. 891 (R.I. 1929). Any arguable ambiguity or silence in that decision does not amount to, and should not be construed as, controlling precedent. *New England Tel. & Tel. v. Public Utilities Commission*, 742 F.2d 1 (1st Cir. 1984). Questions which merely "lurk in the record," but which were neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents. *Webster v. Fall*, 45 S.Ct. 148 (1925). Appellate court opinions are not taken to contain holdings on matters which the court did not discuss and which, presumably, the parties did not argue. *Sweeney v. Westvaco Co.*, 926 F.2d 29 (1st Cir. 1991).

The Supreme Court found that the filing of a Mechanic's Lien involves a property interest significant enough to invoke the Due Process Clause, rejecting Gem's argument to the contrary. 867 A.2d at 810. The Court focused its constitutional analysis of the new amendment on its feature which gives the landowner the right to a hearing "forthwith" on the validity of the lien -- a remedy that was non-existent under the original statute. Following United States Supreme Court authority on due process requisites inherent in prejudgment remedies, the Court termed the newly-available prompt hearing "an important factor in determining whether the procedural safeguards adequately limit erroneous deprivation; it allows the property owner to immediately challenge the deprivation." 867 A.2d at 810-11. The Court emphasized the great importance of this feature: "The question of *when* that hearing is to take place is critical in limiting the risk of erroneous deprivation: the more prompt the hearing, the less the risk of erroneous deprivation." 867 A.2d at 811 (emphasis in original) . . . [W]e interpret this remedial statute to provide a property owner (as well as a contractor or other person of interest), *at any time after the mailing of the notice of intention* -- and, significantly, *potentially before the lien is perfected* -- the opportunity to challenge the claimed lien on a number of grounds, including its substantive invalidity, or for some other procedural defect under the statute." 867 A.2d at 812 (emphasis in original). In short, the availability of the prompt hearing under the amendment is the fulcrum of the Supreme Court's holding that the *amended* Rhode Island Mechanic's Lien statute is constitutionally sound: "Tipping the scales in favor of constitutionality is the combination of the claimant's statutory preexisting interest in the property *and the availability of a prompt post-deprivation hearing*." 867 A.2d at 818 (emphasis added).

The Superior Court's findings and holding on the unconstitutionality of the original statute

stand undisturbed by the opinion of the Supreme Court which concerns only the constitutionality of the amended version of the statute. The Rossis have been deprived of their property (i.e. their funds) without the benefit of a prompt hearing. By operation of the original statute, their funds were held up for three years before the Supreme Court rendered its decision. The Rossis' opportunity for the prompt, timely hearing to which they are constitutionally entitled is forever lost -- there simply can be no "prompt post-deprivation hearing" for them. Thus, the harm caused to the Rossis cannot be redressed merely by the conduct of such a hearing at this time. It is based on *this* deprivation of due process rights, and the Superior Court's undisturbed holding that the original statute is unconstitutional, that the Rossis now seek relief in this Court.

It is for these reasons that Plaintiffs seek declaratory and injunctive relief, and damages and attorneys fees pursuant to this Court's original subject matter jurisdiction over claims under 42 U.S.C. § 1983 for violation of due process rights under the U.S. and Rhode Island Constitutions, as well as pursuant to this Court's supplemental jurisdiction over their state-law claim for slander of title. Substantively speaking, the slander of title claim is valid and should be permitted to proceed in light of the Superior Court's decision finding the mechanics' lien statute unconstitutional.

## II. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

Defendant Gem's argument that the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction is based on its faulty understanding of the scope and import of the R.I. Supreme Court opinion. Defendant assumes that Plaintiffs are asking this Court to disagree with the Rhode Island Supreme Court and hold that the new, amended R.I. Mechanics' Lien Law is unconstitutional. As discussed above, that is not the relief which the Rossis are seeking, which

is recompense for deprivation of due process caused by operation of the original Mechanics' Lien statute, giving them no prompt post-deprivation hearing. The foundation of the Rossis' claims is the Decision of the Superior Court, which remains to this day disturbed by the Supreme Court's decision in all respects pertinent to the claims advanced in this case. The predicate conditions for invoking the *Rooker-Feldman* doctrine are simply not present in this case.

The *Rooker-Feldman* doctrine is a basic principle of subject matter jurisdiction that federal district courts should not serve as appellate courts to state courts, meaning that a federal district court should not review and re-decide issues already determined by the state court. Further, where a party did not actually present its federal claims in state court, *Rooker-Feldman* also forecloses lower federal court jurisdiction over claims that are "inextricably intertwined" with the claims adjudicated in state court. A federal claim is "inextricably intertwined" where the federal claim can succeed only to the extent that the state court wrongly decided the issues before it. In other words, the federal court would, in effect, have to reverse the state court's decision as if it were an appellate court in order for the plaintiff's federal claim to prevail. *Badillo-Santiago v. Naveira-Merly*, 378 F.3d 1, 6 (1st Cir. 2004); *Rosenfeld v. Egy*, 346 F.3d 11, 18-19 (1st Cir. 2003); *Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42, 44 (1st Cir. 2003); *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003); *Picard v. Members of Employee Retirement Board*, 275 F.3d 139, 145 (1st Cir. 2001); *Wilson v. Shumway*, 264 F.3d 120, 123-24 (1st Cir. 2001); *Sheehan v. Marr*, 207 F.3d 35, 39-40 (1st Cir. 2000) [*quoting Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999)]; *Narragansett Indian Tribe of R.I. v. Banfield*, 294 F.Supp.2d 169, 171 (D.R.I. 2003); *Pascoag Reservoir & Dam, LLC v. State of Rhode Island*, 217 F.Supp.2d 206, 215 (D.R.I. 2002). In addition, the *Rooker-Feldman* doctrine does not apply to cases which are

ongoing in state court, as is *Gem* because it was remanded back to Superior Court for further proceedings consistent with the amended Mechanics' Lien statute. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517 (2005); *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17 (1st Cir. 2005).

The *Rooker-Feldman* doctrine is by no means a wholesale bar to a constitutional challenge to a state statute. Absent an effort to undo a state court decision, a general attack on a state law or regulation in the federal court is not precluded by a prior state court judgment applying that law or regulation to the plaintiff. *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 34 (1st Cir. 2004) [*citing* 18B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE, § 4469.1 at 123 (2d ed.1998); *Wilson v. Shumway*, 264 F.3d 120, 124 (1st Cir. 2001). It is only where the federal action asks the court to undo a prior state court judgment that the *Rooker-Feldman* doctrine comes into play. Stated more succinctly, the *Rooker-Feldman* doctrine does not insulate state *law* from federal constitutional challenge; it only insulates state court *judgments* from federal review, revision, or reversal. *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 33-34 (1st Cir. 2004).

## III. PLAINTIFFS' CLAIMS ARE NOT BARRED BY COLLATERAL ESTOPPEL

The doctrine of collateral estoppel, or "issue preclusion" bars re-litigation of "particular issues that were actually litigated in a prior action." *Wiggins v. Rhode Island*, 326 F.Supp.2d 297, 303 (D.R.I. 2004). The issue must have been identical to the issue raised in the later action, which must resulted in a final judgment on the merits. *Bilida v. McCleod*, 211 F.3d 166, 170 (1st Cir. 2000).

In the context of Gem's Superior Court Petition to Enforce, the Rossis had moved to

dismiss that action on the basis that the law did not provide them sufficient Due Process protection and was therefore unconstitutional. Nowhere in that action was any claim made which would constitute an *in personam* claim for any of the damages arising out of the Due Process violations which have occurred. There is clearly no collateral estoppel as to Plaintiffs' Section 1983 claim and slander-of-title claim because these issues were *never* "actually litigated," nor has the state court litigation been concluded in any respect that amounts to a final judgment. The Rhode Island Supreme Court did not hold that the earlier Mechanics' Lien statute, under which all of the offending action by Gem was taken, was constitutionally sound. The Court discussed and decided the constitutionality of the *amended* statute -- as it was required to do -- and remanded the matter for further proceedings in the Superior Court. The Supreme Court's decision left the Superior Court's opinion on the unconstitutionality of the earlier statute undisturbed, and in fact, agreed with it in principal.

While the Rhode Island Supreme Court concluded that the amended law applied to the "lien substitution" (i.e. the funds being held in the Superior Court registry), it did *not* state *how* it would apply. The Supreme Court, again in keeping with its long established and well-precedented practice, applied the law as amended in determining simply the issue of whether the law itself, i.e. GEN. LAWS R.I. § 34-28-1 *et seq* was constitutional. It stopped far short of making any determination as to whether the Rossis' constitutional rights to due process were violated by the old law, nor would it make any such determination since no Section 1983 claims had been raised in either the Superior Court or the Supreme Court in any event. The Court's opinion, therefore, must be read and applied *in that context.* only In fact, it never spoke to that issue or made a determination one way or another. Whether the Rossis' constitutional right to due process

was violated has yet to be ruled upon by the R.I. Supreme Court.

The R.I. Supreme Court does not address a party's claim on appeal which the trial court did not address, and thus on which there was no final ruling on the issue. *See State v. Partington*, 847 A.2d 272 (R.I. 2004) [Supreme Court declining to address police officer's equal protection claim which Superior Court motion justice did not address or decide in making declaratory judgment; issue was left unresolved]; *Harvey Realty v. Killingly Manor*, 787 A.2d 465 (R.I. 2001) [Rhode Island Supreme Court will not consider an issue on appeal which was not raised before trial court ("raise or waive" rule]; *In Re Amber P*, 877 A.2d 608 (R.I. 2005) ["it is established rule that this Court will not review issues that are raised for the first time on appeal"]; *Lyons v. State*, 880 A.2d 839, 841 (R.I. 2005) [refusal to consider constitutional issue on appeal under "raise or waive" rule on basis, in part, that "the record must be sufficiently developed to permit review of issue. . . "]

Although the Supreme Court did request in its pre-briefing order that the parties address in their statement of the case "the issue *inter alia* of the effect, if any of the General Assembly's 2003 Mechanics' Lien legislation, § 34-28-17.1, on [the] appeal and on the constitutional issue to be raised herein", it did not rule that the new amendment wiped out or cured any potential 42 U.S.C. § 1983 claims. It merely ruled that it was constrained to apply the law as amended on appeal in deciding whether the law was constitutional. This made sense because the Superior Court matter on appeal was an action which had not even a glimmer of any other civil claims asserted in the record below, and the Rossis had simply moved to dismiss the mechanics' lien petition on grounds that the law was unconstitutional. The Supreme Court vacated the judgment and remanded the case to the trial court "[f]or the reasons stated herein and because the motion

justice did not have the opportunity to review the Mechanics' Lien Law as amended by § 34-28-17.1." *Gem*, 867 A.2d at 818. The only meaning of this language, in keeping with the Court's long-standing practice of requiring the development of a record and argument before the lower court prior to determining issues, is that the trial justice must now review and apply the *amended* law and make a determination thereon as to whether it changes his decision that the Rossis's money must be released from the Superior Court registry.

## IV. PLAINTIFFS' CLAIMS ARE NOT BARRED BY *RES JUDICATA*

Among other things, Defendant Gem has raised the doctrine of *res judicata* (or "claim preclusion") as a bar to the Section 1983 claims asserted in Plaintiffs' complaint. This preclusive doctrine does not come into play here because, as noted above, Plaintiffs' Section 1983 claims is a different cause of action from the claims asserted between the parties in the state court.

### A. Plaintiffs' Claim Is a Different Cause of Action Which Involves Continuing Wrongful Conduct Causing Continuing Harm

In this Court, federal law principles of res judicata are controlling. "In determining whether res judicata precludes litigation of a party's claims, the Court considers three factors: (1) whether a final judgment was entered on the merits in an earlier suit; (2) **whether there is a sufficient identity between the causes of action asserted in the earlier and later suits**; and (3) whether there is sufficient identity between the parties in the two suits." *American Bridge Co. v. Providence Place Group Limited Partnership*, 263 F.Supp.2d 330, 333 (D.R.I. 2003) [*citing Apparel Art International v. Amertex Enters., Ltd.*, 48 F.3d 576. 583 (1st Cir. 1995), *citing Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414-15, 66 L.Ed.2d 308 (1980)]. (emphasis

added)[4]

As a general matter, one party's suit for payment arising out of a contractual or quasi-contractual relationship is a separate cause of action from the other party's suit for a tort committed in the course of that relationship, which will not be precluded by the earlier action. *Yesteryears, Inc. v. Waldorf Restaurant, Inc.*, 730 F.Supp 1341, 1350 (D.Md. 1989) [*citing* RESTATEMENT (SECOND) OF JUDGMENTS § 22, illustration 2; *World Wide Imported Car Co. v. Savings Bank of Baltimore*, 41 Md.App. 263, 396 A.2d 547 (1979)].

The fact that a plaintiff's two successive actions have a common goal is not sufficient to bar the later action by *res judicata*. In *Russo v. Baxter Healthcare Corp.*, 919 F.Supp. 565 (D.R.I. 1996), the plaintiff filed an action in this Court alleging misappropriation of trade secrets and intentional interference with contractual relations. Previously, plaintiff had sought an injunction in R.I. Superior Court to enjoin the defendant's execution of a contract which would

[4]*Accord Ritter v. Mantissa Inv. Corp.*, 864 A.2d 601 (R.I. 2005), holding that res judicata did not bar a former wife from litigating, after the divorce judgment, her claim to half ownership of former marital residence. In applying its "transactional" res judicata analysis, the R.I. Supreme Court noted that "what constitutes a `transaction,' and what groupings constitute a `series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations * * *. " *Id.* at 605 [quoting *El Gabri v. Lekas*, 681 A.2d 271, 276 (R.I. 1996), *quoting Manego v. Orleans Board of Trade*, 773 F.2d 1, 5 (1st Cir. 1985)]. The *Ritter* court held that the former wife's claims in her second action were not precluded because they did not devolve from the divorce, but rather from a trust which, although existing at the time of the divorce, was sufficiently distinct from matters in the divorce proceeding because it had been created ten years prior to the divorce. The R.I. Supreme Court agreed, noting that the "transactional" rule should not be applied so broadly as to define the transactions out of which the wife's first action arose as the parties' entire marriage. *Id.* Further, any claims which arise during pendency of, but not asserted within, earlier claim are not barred by res judicata. *See Waters v. Magee*, 877 A.2d 658, 667 (R.I. 2005).

have granted the defendant the exclusive right to buy and market the product which the plaintiff had designed and in which he sought to protect his rights. *Res judicata* did not bar the second action because the injunction concerned a contract, and the federal court action concerned actions taken by the defendant six months later. Although both actions had a common goal based on a common nucleus of fact, that is, to stop a course of unfair competition by the defendant, the two actions were held sufficiently distinct to survive res judicata. *Id.* at 569.

Here, the requisite sameness of cause of action for *res judicata* purposes is absent. Although there may be an extended underlying course of conduct on the part of Gem, that does not, in itself, give rise to the "same cause of action" in this Court. This is particularly true where, as here, there is continuing interference with the plaintiff's constitutionally-protected interests, causing continuing harm.

The United States Supreme Court rejects a straight "same course of conduct" test in favor of a "same or different cause of action" approach when considerations of *res judicata* come into question. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) was an action for treble damages under the federal antitrust laws. The Supreme Court reversed the lower federal courts' dismissal of the plaintiffs' complaint on res judicata grounds based on an earlier action filed by the plaintiffs. In the plaintiff' original action for damages and injunctive relief, plaintiffs alleged that the defendants had conspired to establish a monopoly in the distribution of standard accessories in the motion picture advertising industry by the issuance of exclusive licenses. That litigation was settled upon the defendants' agreement to furnish plaintiffs with standard accessories and future license agreements, but plaintiffs did not press their claim for injunctive relief. Several years later, plaintiffs instituted a second action based on

continuing anti-competitive activity by the defendants occurring after entry of judgment in the first action. The defendants raised the defense of res judicata because the plaintiffs had not pressed for injunctive relief in the first action. The Supreme Court held that res judicata did not bar the second action:

> That both suits involved "essentially the same course of wrongful conduct" is not decisive. Such a course of conduct -- for example, an abatable nuisance -- may frequently give rise to more than a single cause of action . . . This conclusion is unaffected by the circumstance that the (earlier) complaint sought, in addition to treble damages, injunctive relief which, if granted, would have prevented the illegal acts now complained of. A combination of facts constituting two or more causes of action on the law side of a court does not congeal into a single cause of action merely because equitable relief is also sought. And as already noted, a prior judgment is res judicata only as to suits involving the same cause of action. There is no merit, therefore, in the respondents contention that petitioners are precluded by their failure in the (earlier) suit to press their demand for injunctive relief.

349 U.S. at 327-28, 75 S.Ct. at 868-69.

Where, as here, there is *ongoing* wrongful conduct, application of the doctrine of *res judicata* is to be avoided. *Pignons S.A. de Mecanique v. Polaroid*, 701 F.2d 1, (1st Cir. 1983). "The doctrine of *res judicata*, involving claim preclusion, is a concept which we hesitate to apply in this case because of the ambiguities surrounding its applicability to situations of ongoing wrongful conduct." *Id.* [*citing Lawlor*, *supra*; *Walsh v. International Longshoremen's Association*, 630 F.2d 864, 973 (1st Cir. 1980), limiting *Lawlor* to cases where "subsequent conduct was broader and more far-reaching than the conduct which led to the original complaint."]

Generally, a claim for relief from a continuing tort[5] will not be precluded by earlier

[5]E.g. a truck owner's claim against a private garage owner and government officials who conspired to hold the truck, without due process, for owner's nonpayment of taxes

litigation between the same parties on related claims. Even if the second litigation arises out of the same course of conduct as the earlier litigation, where the conduct is ongoing and is causing ongoing harm to the other party's constitutional rights, the earlier litigation between the same parties will not given *res judicata* effect on a later civil rights claim. In *Schneider v. Colegio de Abogados de Puerto Rico*, 456 F.Supp. 1251 (D.P.R. 1982), *later proceedings* 682 F.Supp. 674 (D.P.R. 1984), 742 F.2d 32 (1st Cir. 1984); *aff'd in part, reversed in part on other grs.*, 917 F.2d 620, 629 (1st Cir. 1990), the U.S. District Court of Puerto Rico, and later the First Circuit, confronted whether *res judicata* bars the plaintiffs from asserting a Section 1983 claim based on the unconstitutionality of statute which had been applied against them in an earlier action in which they had not raised the civil rights claim. The earlier action was a state-court action in which the defendants were lawyers who refused to pay mandatory annual dues to their integrated state bar association. They lost when the highest state appellate court held them liable for nonpayment of the dues, as required by state law and disbarred them. In its opinion, the state appellate court found that the statute satisfied the mandates of the state constitution, but did not rule on its federal constitutionality. The lawyers then filed a Section 1983 action for injunctive relief and damages against the state bar, alleging that their civil rights had been violated because the statute was unconstitutional because it deprived them of their federal due process rights by taking away their licenses to practice law. *Res judicata* did not bar the Section 1983 claim because the Section 1983 claim was a different cause of action than the earlier litigation. A

---

alleges a continuing tort giving rise to a civil rights action under 42 U.S.C. § 1983. *Storey v. United States*, 629 F.Supp. 1174, 1177-78 (N.D. Miss. 1986). *See also R.G. Harry Corp. v. Mushroom Makers, Inc.*, 436 N.Y.S.2d 927, holding that although second claim may arise from same course of conduct as first action, "[i]f the tort is continuous, it gives rise to a fresh cause of action so long as the wrong persists" and is not barred by res judicata. *Id.* at 930.

second suit involves a "different cause of action" if its outcome depends on different evidence than was offered in the first suit. 456 F.Supp. at 1270. More central to the analysis, however, is the question whether the harm is of a continuing nature, caused by ongoing conduct that deprives a plaintiff of his due process rights:

> Where the object of the first proceeding is to establish the legality of continuing conduct into the future, a second action is precluded by the first judgment. [citations omitted] ***Where the first action concerns only a litigation of past legal conduct however, a new claim or cause of action is created as the conduct continues, and the new claim is not precluded.*** [citations omitted] ***Thus claim preclusion cannot apply in settings of continuing conduct.***

546 F.Supp. at 1272. (emphasis added)

Rhode Island law echoes this federal "same cause of action" principle of in *res judicata* analysis. In *Ritter v. Mantissa Inv. Corp.*, 864 A.2d 601 (R.I. 2005), a former wife brought an action against her former husband for half of the former marital domicile. She based her claim on her beneficial ownership of half of the stock of the corporation which owned the residence. Reversing the lower court, the R.I. Supreme Court held that the parties' earlier divorce judgment was not res judicata as to the new, post-divorce claim. While Rhode Island follows the "transactional" approach[6] to res judicata, "[w]hat factual grouping constitutes a `transaction,' and what groupings constitute a `series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations." *Id.* at 605. The court noted that the earlier and later litigation really involved

---

[6]meaning that re-litigation is barred for "all or any part of the transaction, or series of connected transactions, out of which the [first] action arose." *Ritter*, 864 A.2d at 605 [*citing El Gabri v. Lekas*, 681 A.2d 271, 276 (R.I. 1996), *quoting Manego v. Orleans Board of Trade*, 773 F.2d 1, 5 (1st Cir. 1985)].

different causes of action. The basis for the post-divorce litigation was not the divorce itself, but the existence of a trust for the wife's benefit which had been created ten years prior to the divorce. Although undeniably the claim existed at the time of the divorce and was unquestionably related to the parties' property division in the context of the divorce, the Court did not bar the action. It held that the scope of the earlier action, and therefore its claim-preclusive effect, would not be drawn so broadly as to bar every claim that *could have been but was not* brought within it. "To bar plaintiff's claim under the transactional rule would require us to define the series of transactions out of which the first action arose as the entire marriage and, thus, all property rights vis as vis the ex-spouse could have been litigated in the divorce ending that marriage. Other authorities lead us to the opposite conclusion." *Id.* Since the claim had not been actually litigated in the divorce, it was not barred by res judicata. *See also Zablowski v. New England Teamsters, Inc.*, 410 A.2d 436, 438 (R.I. 1980) [" . . . [B]efore the rules of res judicata can apply the claim of the original final judgment must be identical to that claim which a party seeks to have adjudicated in a subsequent suit."]

Even where the elements of *res judicata* are technically satisfied, the doctrine should not be applied mechanically where the judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that plaintiff should be permitted to split his claim." RESTATEMENT (SECOND) OF JUDGMENTS, § 26(1)(d)[7]; *see also Liu v. Striuli*, 36 F.Supp.2d 452 (D.R.I. 1999) [provision in statute under which earlier action was brought which preserves other remedies permits splitting cause of action and defeats defense of *res judicata*]

---

[7]Followed in Rhode Island. *See Plunkett v. State*, 869 A.2d 1185 (R.I. 2005).

### B. Section 1983 Claims Which Involve a "Different Cause of Action" are Not Barred by Res Judicata

Section 1983 claims are not precluded by earlier litigation between the same parties where, as here, the Section 1983 claims, although arising from the same course of conduct, involve distinct causes of action from the earlier litigation. In *Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004), a billboard owner's Section 1983 federal court action against the state was not precluded because he failed to assert it as a counterclaim in earlier state court litigation. The state had brought a nuisance action against him in state court alleging nuisance based on plaintiff's unlawful posting of advertisements on his billboard. The Section 1983 action in federal court was based on the state's alleged interference with the plaintiff's First Amendment rights. The federal court claims were not precluded because they did not involve the same "primary right" or "primary duty" (i.e. they were a different cause of action) as in the state court matter. The "primary right" involved in the state court litigation was the people's right to be free of obtrusive advertising displays. Conversely, the "primary right" in the federal court Section 1983 litigation was the billboard owner's right to expression under the First Amendment. Because the "primary rights" in the two actions were different, the causes of action were different, and the judgment in the state court action did not bar the Section 1983 claim. [*Compare Manning v. City of Auburn*, 953 F.2d 1355 (11th Cir. 1992), allowing subsequent federal court Section 1983 civil rights action by individual employee based on employment discrimination, following state court class action suit from which plaintiff had been dismissed. Res judicata argument failed in federal court action because the two actions involved "different causes of action" in that actions complained of in federal court occurred at different time, involving different primary rights and duties.]

Another approach to the "same cause of action" analysis involves an examination as to whether the relief afforded in the Section 1983 would redress the civil rights injury without doing violence to or otherwise interfere with the earlier claim and relief sought in state court litigation. In *Remer v. Burlington Area School Dist.*, 205 F.3d 990 (7th Cir. 2000), a regional school district brought a state-court injunction action against a student to bar him from school premises. Subsequently, the student and his mother brought a federal court Section 1983 action against the school district because it had denied the student his due process rights in barring him from school. Res judicata did not bar the Section 1983 claim because, despite the fact that it arose out of the same transaction or nucleus of facts as the state court litigation, its success would not "nullify" or call into question the validity of the state court judgment. For the same reason, the Section 1983 claim was not considered a compulsory counterclaim in the state court litigation, and was allowed to proceed. *Id.* at 1000.

In *North American Cold Storage v. County of Cook*, 531 F.Supp. 1003 (N.D. Ill. 1982), a group of taxpayers brought a Section 1983 action in federal court against county officials, alleging civil rights violations in connection with overassessment of their real property values. The county had brought a collection action against the taxpayers in state court, in which the taxpayers could have asserted counterclaims to vindicate their Section 1983 rights., but they did not. The federal court action was not barred by res judicata because, although the underlying facts were the same, the defense in the state court litigation involved a different cause of action than the civil rights litigation in the federal court. Exoneration of the taxpayers' rights in the collection action would not compensate them for the Section 1983 damages to which they were entitled. Res judicata would bar only claims that could have been brought *defensively* as

counterclaims, i.e. involving the same "cause of action" in the earlier state court action. *Id.* at 1008.

**C. The Rossis' Section 1983 Claim is Not a Compulsory Counterclaim in Gem's Collection Efforts in the State Court**

Given Gem's posture as a plaintiff in the state court litigation, the res judicata analysis here also calls for an examination as to whether the Rossis' Section 1983 claim might have been a compulsory counterclaim in state court proceedings. In Rhode Island, for a claim to be a compulsory counterclaim in another proceeding, it is not enough that the claim merely "arise out of the same transaction or occurrence that is the subject matter of the opposing party's claim."[8] Echoing the federal jurisprudence on res judicata, the claim must also be the same cause of action. In *Weiner v. Weiner*, 321 A.2d 425 (R.I. 1974), for example, the plaintiff's claim was brought in Superior Court to recover amounts due from the defendant, her former husband, under their separation agreement. The husband's counterclaim for a determination as to amounts due prospectively, based on his changed economic circumstances, was held a permissive and not a compulsory counterclaim. The counterclaim was a different cause of action as its resolution would not be barred by resolution of the plaintiff's claim. *Id.* at 431.

With application to this case, the Rossis' Section 1983 claim is a different cause of action from Gem's collection efforts based on work done, and is therefore not a compulsory counterclaim. As in *Weiner*, the resolution of Gem's state court collection efforts will not bear upon the Rossis' entitlement to Section 1983 damages. Their civil rights claims were caused by the recording of the lien, thereby depriving the Rossis of a significant interest in their property,

---

[8]*See* R.I. Rule Civ. Proc. 13(a), "Counterclaim and cross-claim."

and by the deprivation of their funds held in the Superior Court registry.[9] Likewise, the ultimate resolution of the Rossis' Section 1983 claims will not affect the outcome of Gem's state court collection efforts. Although in a literal sense these claims evolved from the same ill-fated construction work, they are separate and distinct causes of action in every other way -- the pertinent evidence, the controlling legal theories, the rights and duties and the damages do not overlap. Although the claim evolves from a *course of* conduct by Gem, it is not the same conduct by Gem which is at issue here. Gem's state court litigation is based on work done at Rossis' building. This litigation is based on Gem's later conduct, that is, its use of an unconstitutional mechanics' lien to interfere with the Rossis' property rights without due process. In short, this litigation is about different and continuing conduct, at a different time, giving rise to a different cause of action for different harm which is continuing. Res judicata does not apply.

Another consideration insofar as *res judicata* is that Gem's Petition to Enforce its Mechanics' Lien is an *in rem* action under Rhode Island law. The Rhode Island Supreme Court has long held "that a mechanics' lien proceeding is an equitable *in rem* proceeding." *Hunt v. Darling*, 59 A. 398 (R.I. 1904). The true respondent, therefore, is the land upon which the lien attaches. *Tilcon Gammino, Inc. v. Commercial Associates, et al*, 570 A.2d 1102, 1107 (R.I. 1990). More significantly, however, is the Rhode Island Supreme Court's statement in *Tilcon Gammino*, that "[t]he respondents have the choice of proceeding with their counterclaim in the equitable [i.e. the *in rem*] proceeding or reserving the claim and bringing a separate suit for

---

[9]Giving the Rossis claim even the most conservative view, by the time the Rhode Island Supreme Court decided Gem's appeal of the Superior Court's finding that the Mechanics' Lien law was unconstitutional, the Rossis' funds had already been held for almost three years. By that time, any possibility of a prompt post-deprivation hearing had already long since passed.

breach of contract at law. The respondents cannot assert that their rights to a jury trial are being denied when the option of filing an independent action is readily available to them." *Id.* at 1107-08. This principle is stated not only in *Tilcon Gammino*, but also within the statutory scheme of the Rhode Island Mechanics' Lien statute. GEN. LAWS R.I. § 34-28-33.[10] The propriety of "splitting claims" in the Mechanics' Lien context was directly recognized by this Court in *Commercial Associates v. Tilcon Gammino, Inc.*, 801 F.Supp. 939 (D.R.I. 1992), *aff'd* 998 F.2d 1092 (1st Cir. 1993), wherein this Court held that the doctrine of *res judicata*, based on a petition to enforce a mechanics' lien in the R.I. state court, was inapplicable to bar a subsequent action in this Court. The Court recognized that "[a]n even more compelling reason for not applying the merger and bar rules in this se is that the mechanics' lien statue expressly preserves a claimant's right to pursue all other available remedies including *in personam* claims." 801 F.Supp. at 943.

## V. <u>PLAINTIFFS' COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED</u>

Section 1983 liability for violation of constitutional rights has been officially recognized since *Monroe v. Pape*, 365 U.S. 167 (1961), which abrogates the former requirement that a plaintiff must first exhaust state law remedies before maintaining a Section 1983 claim. The purpose of Section 1983 is "to interpose the federal courts between the States and the people from unconstitutional action under color of state law `whether that action be executive,

[10]34-28-33. Remedy of chapter not exclusive. -- Except as otherwise specified, nothing in this chapter shall be construed to limit the right of any person, whether he or she have a valid lien hereunder or not, to remedies otherwise available to him or her under law; and the rights, if any, of any person who has filed his or her account and demand or claim under § 34-28-16 for any deficiency, or the rights, if any, of any person who has failed to file his or her account and demand or claim thereunder, against any other person (rather than against the property which is the subject matter of any petition under this chapter) shall not be impaired by the provision of this chapter.

legislative or judicial.'" *Patsy v. Florida Board of Regents*, 457 U.S. 496, 503 (1982) [*quoting Mitchum v. Foster*, 407 U.S. 225, 242 (1972)]. It provides an individual with a tort-like cause of action for the "deprivation of civil rights guaranteed by (the Constitution and) Acts of Congress." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617-18 (1979); *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). Section 1983 protects a property owner against deprivation of his property without due process of law. *Lynch v. Household Finance Corp.*, 405 U.S. 538 (1972) [section 1983 action alleging deprivation of property without due process, arising out of unconstitutional wage garnishment law].

Plaintiffs' complaint satisfies the pleading standard for relief under 42 U.S.C. § 1983. Federal courts are barred from applying any "heightened pleading standard" and require only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 113 S.Ct. 1160 (1993) (case alleging municipal liability under Section 1983.)

A. **Plaintiffs Have Established a Due Process Violation**

Defendant's argument presumes that the Rhode Island Supreme Court's decision on the constitutionality of the amended Mechanics' Lien law, and its remand of the matter to the Superior Court, somehow precludes the actionability of Defendants' activity under the original statute. As discussed above, regardless of what the Rhode Island Supreme Court has held as to the amended statute, the original Mechanics' Lien law has operated to hold up the Rossis' funds for three years, and has been held unconstitutional. No proceeding conducted at this time can afford the "prompt post-deprivation hearing" which constitutional standards require -- as the Rhode Island Supreme Court itself has now said.

The Rhode Island Supreme Court's opinion that the amended mechanics' lien statute is constitutional in providing for a post-deprivation hearing, and its remand of the matter to the Superior Court for further proceedings, does not obviate or preclude the Rossis' Section 1983 action in this Court. A subsequent curative amendment to an unconstitutional statute cannot validate actions taken pursuant to the original statute to the extent that a property owner has been deprived of his property without due process of law. The property owner's claim for deprivation of property without due process of law survives the amendment. *State of Indiana v. Lake Superior Court*, 820 N.E.2d 1240, 1253 (Ind. 2005) [*quoting Martin v. Ben Davis Conservancy Dist.*, 238 Ind. 502, 512, 153 N.E..2d 125, 130 (1958); *Muncie Nat'l Bank v. Miller*, 91 Ind. 441, 446 (1883)]; *Hoffman v. City of Red Bluff*, 407 P.2d 857, 862 (Cal. 1965); *Cameron Estates, Inc. v. Deering*, N.Y.S.2d 687, 693-94 (Supr. Ct. 1952); *Logan v. City of Glendale*, 102 Cal.App.2d 861, 870, 229 P.2d 128 (Cal.Ct.App.1951). Likewise, the availability of a post-deprivation hearing in the state forum does not foreclose a Section 1983 action in federal court where, as here, the state remedy does not overcome or diminish the nature of the deprivation, i.e. the denial of due process *at a meaningful time*. *Stana v. School District of City of Pittsburgh*, 775 F.2d 122, 128-29 (3d Cir. 1985) [*following Cleveland Board of Education v. Loudermill*, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)].

**B. The State Action Requirement is Satisfied**

Defendant argues that the requisite state action element is absent from the Rossis' § 1983 claim. This is not true. When, as here, a private party acts with a state official in accordance with an unconstitutional state law, he is said to be acting under color of state law. In *Lugar v. Edmondson Oil, Inc.*, 457 U.S. 922 (1982), the plaintiff's creditors obtained an *ex parte*

prejudgment attachment under state law. The creditors were properly named as defendants in the plaintiff's Section 1983 action alleging deprivation of his property without due process of law. The creditors who acted jointly with state officials were held to have acted "under color of state law"[11] because the state statute authorizing their actions was alleged to be procedurally defective.

Gem advanced the same "no state action" argument in *Gem Plumbing*, *supra*, where the Rhode Island Supreme Court squarely addressed and rejected it, following *Connecticut v. Doehr*, 501 U.S. 1 (1991). The Court recited the various specific ways in which action taken by Gem pursuant to the Mechanics' Lien law *is* state action for purposes of the Fourteenth Amendment:

> Before reaching the procedural due process issue, we first must address Gem's argument that mechanics' liens do not involve state action and, thus, are not subject to the Fourteenth Amendment. "[T]he mere existence of a body of property law in a State, whether decisional or statutory, "does not suffice as state action under the Fourteenth Amendment. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 160 n.10 (1978). In its most recent review of a prejudgment remedy under procedural due process, however, the United States Supreme court directly addressed state action:
>
> > "[p]rejudgment remedy statutes ordinarily apply to disputes between private parties rather than between an individual and the government. Such enactments are designed to enable one of the parties to `make use of state procedures with the overt, significant assistance of state officials,' and they undoubtedly involve state action `substantial enough to implicate the Due Process Clause.'" *Doehr*, 501 U.S. at 10-11

(emphasis in original R.I. Supreme Court opinion)

> Government officials provide "overt, significant assistance" in almost every step of the mechanic's lien process. A town official records the notice of intention perfecting the lien. Section 34-28-5. A town official records the notice of lis pendens. Section 34-28-12. Prior to a show-cause hearing to determine whether the lien should be enforced for the amount claimed, a Superior Court clerk has a newspaper advertisement published giving notice to "all persons having a lien, by

[11]even though the state officials who had perfected the attachment were not named in the action.

> virtue of this chapter, or any title, claim, lease, mortgage, attachment, or other lien or encumbrance, or any unrecorded claim on all or any part of the same property" and issues direct citations to each person listed on the petition to enforce the lien. Section 34-28-14. Finally, the court registry holds the cash payment or bond in the event the property owner wishes to discharge the lien. Section-28-17. Thus, the operation of our Mechanics' Lien Law qualifies as state action within the broad sweep of *Doehr*.

*Gem Plumbing*, 867 A.2d at 808-09.

Moreover, Attorney Levine's signing of the affidavit without the requisite personal knowledge does give rise to due process implications. Levine, then a partner in the law firm of Gemma & Levine, signed the Notice of Intention in his capacity as outside legal counsel to Gem. In *First Security Mortgage Co. v. Hansen*, 631 P.2d 919 (Utah 1981), the plaintiff initiated an action to foreclose a trust deed on property against which the defendant had filed a notice of claim of mechanics' lien. Plaintiff's motion for summary judgment was granted and affirmed, based on the court's finding that the lien was invalid as lacking verification which was required by the state mechanics' lien statute. The affiant had sworn that he was the attorney for the defendant and that his affidavit was signed on behalf of the defendant corporation, but he did not vouch for the accuracy of the facts underlying the claim. In discussing various cases which require the affiant's verification to support a mechanic's lien, the court noted that:

> "The policy underlying these decisions is sound. A lien creates an encumbrance on property that deprives the owner of his ability to convey clear title and impairs his credit. The filing of a lien for an excessive amount could be used to force a settlement unfairly weighted in favor of the claimant . . . These serious consequences justify the statutory imposition of a requirement that one who makes the claim must furnish a sworn statement to the truthfulness of the facts giving rise to it. *Frivolous, unfounded, and inflated claims can thereby be minimized, and the prejudgment property rights of the individuals receive their due process protection.*

*Id.* at 922 (emphasis added).

## C. Plaintiffs Have Alleged Damages Recoverable Under 42 U.S.C. § 1983

Section 1983 plaintiffs are awarded monetary damages in an amount proportional to their injuries caused by a deprivation of their constitutional rights. Where appropriate, the District Courts may apply principles of tort remedies, and where there is no analogous tort remedy, the District Court may adapt the common law of remedies to derive a fair and just damages award. *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Carey v. Piphus*, 435 U.S. 247 (1978).

42 U.S.C. § 1988 also provides for an award of attorneys' fees to the prevailing party. A party "prevails" when actual relief on the merits of his claim "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way directly benefitting the plaintiff." *Farrar v. Hobby*, 506 U.S. 103 (1992). Under Section 1983, persons who act wrongfully under color of state law may be held liable for violations of federal constitutional rights.[12] Private person liability attaches even if the state official involved is ultimately held immune from liability. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Private persons who invoke an unconstitutional state replevin, garnishment or attachment statute may be held liable under Section 1983. *Lugar v. Edmondson Oil, Inc.*, 457 U.S. 922, 941-42 (1982).

In order to have the lien removed from their Property, the Rossis had to borrow the lien amount $35,860, plus costs, which they paid into the Superior Court registry in June, 2002. For almost four years, the Rossis have been paying interest on that amount, and to that extent they

---

[12]**42 U.S.C. § 1983**
Every person who, under color of any statute, ordinance, regulation, custome or usage of any State or Territory or the District of Columbia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party inured in an action at law, suit inequity or other proper proceeding for redress . . .

have sustained actual damages. Had they been given a prompt post-deprivation hearing, their funds would not have been tied up for so long, and they could have avoided the interest payments. In addition, while they are carrying this debt, the Rossis' credit-worthiness is diminished proportionately -- another respect in which they have been damaged. Here, the passage of almost four years cannot be undone. The resulting loss to the Rossis in payment of interest and reduction of eligibility for credit cannot be resolved merely by affording them a post-deprivation hearing now.

## VI. JURISDICTION OVER PLAINTIFFS' CLAIMS SHOULD NOT BE DECLINED UNDER THE FEDERAL ABSTENTION DOCTRINES

Defendant argues that this Court should abstain from exercising its jurisdiction over Plaintiffs' claims, under the *Younger*[13], *Colorado River*[14] and *Pullman*[15] variations on the doctrine of federal abstention. Generally speaking, federal abstention is to be exercised guardedly so as not to suppress a person's rights under the federal law. "Abstention . . . is `an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' and should be invoked in only `exceptional circumstances.'" *Southern Union Co. v. Lynch*, 321 F.Supp.2d 328, 335 (D.R.I. 2004) [*quoting Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)]. "The presence of a federal issues is always a major consideration weighing against surrender of federal jurisdiction." *Id.* [*citing Cruz v. Melecio*, 204 F.3d 14, 25 (1st Cir. 2000)].

---

[13]*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)

[14]*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.E.d2d 483 (1976).

[15]*Railroad Commission of Texas v. Pullman Company* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed.2d 971 (1941)

### A. *Younger* Abstention is Not Warranted

*Younger* abstention embodies a general principle in favor of non-interference by the federal courts in ongoing state court litigation. *Esso Standard Oil Co. v. Cotto*, 389 F.3d 212, 217-18 (1st Cir. 2004); *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 31 (1st Cir. 2004); *Southern Union Co.*, 321 F.Supp.2d at 337. "*Younger* stands for the proposition that principles of comity require `a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States are left free to perform their separate functions in their separate ways.'" *Chaulk Servc., Inc. v. Massachusetts Comm. Against Discrimination*, 70 F.3d 1361, 1367 (1st Cir. 1995) [*quoting Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

The principles in favor of comity inherent in the *Younger* doctrine, however, "must yield to an accommodation of the legitimate interests of *both* the state and national governments." *Chaulk Serv., Inc. v. Massachusetts Comm. Against Discrimination*, 70 F./3d 1361, 1368 (1st Cir. 1995) (emphasis in original) [*citing Younger*, 401 U.S. at 44, 91 S.Ct. at 750-51, *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 10, 107 S.Ct. 1519, 1525-26, 95 L.Ed.2d 1 (1987)]. The *Younger* abstention doctrine does not bar a claim in federal court for relief under § 1983 where, as here, the federal claim is based upon Defendants' actions taken under color of law pursuant to a state civil statute that is flagrantly and patently unconstitutional, even if the plaintiff's state court remedies have not yet been exhausted. *Huffman v. Pursue, Ltd.*, 95 S.Ct. 1200, 1212 (1975). Apparently, Defendant has lost sight of this point because his argument for *Younger* abstention is premised on the same erroneous assumption which undermines Defendant's *Rooker-Feldman*

argument -- that Plaintiffs' claims are merely a thinly veiled attempt to re-litigate the issues addressed by the Rhode Island Supreme Court in *Gem Plumbing v. Rossi, supra*. As discussed above, this is not the purpose for which this action has been filed. Plaintiffs have come into this Court for relief from their deprivation of their due process rights to a prompt hearing on the withholding of their funds in the Superior Court registry for almost four years. The Plaintiffs are seeking a federal remedy in this Court of primary jurisdiction over such claims, against the Defendant for violation of federal law.

As discussed above, the State Supreme Court's holding on the constitutionality of the amended statute is quite apart from the issues now before this Court. The fact that the amended Mechanics' Lien statute has been held constitutionally sound cannot and does not respond the Rossis' deprivation of due process by operation of the original Mechanics' Lien statute. In fact, the State Supreme Court opinion is consistent with the Superior Court's holding that the original Mechanic's Lien law is constitutionally infirm, and to that extent it supports this Court's jurisdiction over the issues now brought before it.

*Younger* abstention cannot be exercised to obstruct the assertion of federal claims in federal court where the plaintiff's access to vindication of those federal rights would be frustrated in state court. Here, the Plaintiffs' claims properly belong in this Court because they are federal law claims under § 1983, and this Court is the more appropriate forum in which to litigate such claims. Plaintiffs assert a violation of a *federal* right to be compensated for their injury arising from a constitutional violation. In *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.3d 252 (1978), the U.S. Supreme Court held that when a cause of action under § 1983 has been proven, there is a *federal* right to be compensated for the injury. As such, the Rossis are not barred from

this Court under *Younger,* which allows a party's federal constitutional claim to proceed in federal court "if the state proceedings fail to provide an adequate opportunity for the complaining party to present its federal claims . . . The question . . . is whether (the plaintiff) has `the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved.'" *Esso Standard Oil Co. v. Cotto*, 389 F.3d 212, 217-18 (1st Cir. 2004) [*quoting Middlesex County Ethics Comm. v. Garden State Bar Ass'n*; 457 U.S. 423, 435, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)]; *see also Chaulk Serv., Inc. v. Massachusetts Comm. Against Discrimination*, 70 F.3d 1361, 1368 (1st Cir. 1995) [*citing Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432, 102 S.Ct. 2525, 2521, 73 L.Ed.2d 116 (1982); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)].

**B. *Colorado River* Abstention is Not Warranted**

Abstention under *Colorado River* is warranted only when the circumstances clearly merit federal abstention. Whenever such abstention is sought, the balance must be heavily weighted in favor of the exercise of federal jurisdiction. Where a federal district court has subject matter jurisdiction over a case, it has a "virtually unflagging obligation" to exercise that jurisdiction, even if a parallel state court action is pending. *See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986).

> The doctrine of abstention, under which a district court *may* decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. It was never a doctrine of equity that a federal court should *exercise its judicial discretion* to dismiss a suit merely because a State court could entertain it.

*Chaulk Serv., Inc. v. Massachusetts Comm'n Against Discrimination*, 70 F.3d 1361, 1368 (1st Cir. 1995) [*quoting Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813-14, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)] (emphasis supplied in *Chaulk*).

Here, the criteria for *Colorado River* abstention are not satisfied.

- For obvious reasons, there is no geographical inconvenience whatsoever of the federal forum over the state forum.
- Because this case is a claim for damages under 42 U.S.C. § 1983, federal law rather than state law controls the outcome of this litigation, and as between the two forums, the District Court is the better forum for litigating that claim.
- The R.I. Mechanics Lien statute, and case authority of this Court and the Rhode Island Supreme Court (discussed above) allow a respondent to proceed on a related claim in federal court, without having to assert it as a counterclaim in the state court proceedings.
- There is nothing vexatious or contrived about Plaintiffs' claims, nor is this action "a reaction to a pending and ultimately adverse state court action", as defendant wrongfully argues. The Rhode Island Supreme Court's opinion is not adverse to (and in many respects is actually supportive of) the claims advanced herein by the Plaintiffs. [*See* discussion above]
- Since this action is one pursuant to the federal constitutionally guaranteed right to due process, over which this Court undoubtedly has both personal and subject matter jurisdiction, respect for the "principles underlying removal jurisdiction" dictate in favor of resolution of Plaintiffs' claims in the District Court.

## C. <u>*Pullman* Abstention is Not Warranted</u>

*Pullman* abstention is invoked when there is an unresolved question of state law underlying a federal law claim, and resolution of the state law question may obviate the need for the federal court to decide the federal constitutional issue. *Southern Union Co. v. Lynch*, 321 F.Supp.2d 328, 335 (D.R.I. 2004). "Under *Pullman*, abstention maybe warranted where state court resolution of an issue of state law might avoid a federal constitutional issue. . . *Pullman* abstention calls for a deferral of a case rather than dismissal and may be a matter of discretion." *Public Service Co. of New Hampshire v. Patch*, 167 F.3d 15, 24 (1st Cir. 1998). [holding *Pullman* abstention unwarranted where timing and outcome of state court litigation was uncertain, and plaintiff faced existing state administrative plan which would have almost immediate detrimental effect on plaintiff's financial status.]

"The First Circuit examines two factors to gauge the propriety of *Pullman* abstention: `(1) whether there is substantial uncertainty over the meaning of the state law at issue; and (2) whether a state court's clarification of the law would obviate the need for a federal constitutional ruling.'" *Southern Union Co.*, 321 F.Supp.2d at 335 [*quoting Ford Motor Co. v. Meredith Motor Co.*, 257 F.3d 67, 71 (1st Cir. 2001). Pullman abstention may not be necessary even if the highest state court has never construed the state statute at issue, as long as the plaintiff's federal claim under that statute is apparent nonetheless. "`If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction.'" *Southern Union Co.*, 321 F.Supp.2d at 336 [*quoting Harman v. Forssenius*, 380 U.S. 528, 534-35, 85 S.Ct. 1177, 14 L.Ed.2d 50

(1965)].

When weighing abstention under *Pullman*, a federal district court also may consider the deleterious effect of the further delay it causes to adjudication of the plaintiff's rights. *Southern Union Co., supra* [noting in accepting federal jurisdiction and rejecting *Pullman* abstention, that plaintiff's claim had been pending for over one and a half years, and that abstention "would require a second cycle of litigation in state court, with the possibility (depending on the state court resolution) of returning to this (U.S. District Court) once again. That result is as inefficient as it is unwarranted."] *Id.* at 336-37 [*citing Cuesnongle v. Ramos*, 835 F.2d 1486, 1499 (1st Cir. 1987), in which the First Circuit refused to order the district court to abstain, citing *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975), wherein the Supreme Court warned that "because of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in `special circumstances.'"].

Here, the relevant state law issues which are predicate to the Rossis' § 1983 claims have already been resolved. Consequently, this Court is not constrained to abstain from exercising its jurisdiction under *Pullman*. The Superior Court has held the original Mechanic's Lien Law unconstitutional as not affording sufficient due process rights to the landowner. While the State Supreme Court has held that the amended Mechanics' Lien law is constitutionally sound, it did not reverse the Superior Court's opinion, implicitly vouching for its legal soundness, and leaving it intact as the law of the case between the Rossis and Gem. There is no unresolved remaining issue of state law necessary to the Rossis' maintenance of their § 1983 claim. One need only consult these two Rhode Island state court opinions to see that any necessary foundation of state

law already exists to support this action.

## VII. This Court Should Not Decline to Exercise its Supplemental Jurisdiction Over the Plaintiffs' State Law Claim

For the various reasons discussed above, the Defendant's motion for judgment on the pleadings should be denied, thus preserving Plaintiffs' right to have this Court also take jurisdiction of and decide their supplemental state law claim of slander of title. In addition, this state law claim is ripe. The lien was improper and therefore defamatory from the outset, as it was supported by an incompetent affidavit signed by an attorney without the requisite knowledge, on behalf of his client. *See Conti v. Geffroy*, 486 A.2d 579 (R.I. 1985) [Attorney not competent to sign affidavit in proof of claim on behalf of client.] Unless and until the federal-question claim is decided, this Court has supplemental jurisdiction over this state law claim which should remain in this Court to avoid a piecemeal resolution of these matters.

## CONCLUSION

For the reasons discussed above, Plaintiffs request that the Defendant's Motion for Judgment on the Pleadings or to Abstain, be denied.

PLAINTIFFS ROBERT V. ROSSI AND LINDA A. ROSSI,
by their Attorney

Patrick J. Dougherty
155 South Main Street, Suite 304
Providence, Rhode Island 02903
tel. (401) 273-9770
fax (401) 273-4750

CERTIFICATION

I hereby certify that on the 24th day of March, 2006, a true and accurate copy of the within document was mailed by regular mail, postage prepaid to the following counsel of record:

Theodore Orson, Esq.
Orson & Brusini, Ltd.
55 Dorrance Street, Suite 400
Providence, RI 02903

[signature]